95 P.3d 64

Henry ANDERSON, and Lurania Boice, husband and wife, Plaintiffs–Appellants,

v.

Henry David GOODLIFFE, an individual, and Dan Aldous, an individual, and Doug Usher and Jody Usher, husband and wife, doing business as River City Rentals, and/or Usher Construction, Defendants–Respondents.

No. 29160.

Supreme Court of Idaho, Boise, April 2004 Term.

July 12, 2004.

Hopkins Roden Crocket Hansen & Hoopes, PLLC Idaho Falls, for Appellants. Teresa L. Sturm argued.

Woolf Combo & Thompson, Idaho Falls, for Respondent Goodliffe. Aaron J. Woolf argued.

Richard D. Petersen, Pocatello, and Saetrum Law Offices, Boise for Respondents Aldous and Usher. Richard D. Petersen argued.

448

KIDWELL, Justice.

This appeal involves a dispute over a strip of property located between lands held by the Appellants, Henry Anderson and Lurania Boice, husband and wife, (Andersons) and Respondents, Henry Goodliffe (Goodliffe), Doug Usher and Jodi Usher, husband and wife, doing business as River City Rentals and/or Usher Construction (Ushers), and their employee/agent, Dan Aldous (Aldous). We affirm the district court.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In May of 1979, Andersons purchased a parcel of land from Mr. and Mrs. Harry Parker. A chain link fence, originally constructed by Eli Smith (Smith Fence), existed upon what appeared to be the boundary between the Andersons' property and the property of their neighbor, Charles Walchly. In June of 1979, Walchly informed Mr. Anderson that the Smith fence encroached upon Walchly's property by approximately ten feet. Anderson and Walchly eventually agreed to remove the Smith fence. Although Anderson and Walchly were able to find only one survey marker, the Andersons and Walchly agreed to construct a new chain-link fence (New Fence) on what the parties agreed to be the boundary line between their respective properties, without locating the second marker. Both Walchly and Anderson knew the New Fence did not sit directly on the survey line dividing their properties. For approximately fifteen years, both Anderson and Walchly treated the New Fence as the boundary between the properties.

In 1995, Goodliffe approached Walchly about purchasing a portion of Walchly's property. The New Fence remained in place at that time. Goodliffe paid Larry Wade to survey the acreage he intended to purchase from Walchly. The Wade survey revealed the discrepancy between the New Fence and the actual boundary between the properties. Goodliffe discussed the discrepancy with Walchly. Goodliffe agreed to accept a strip of property sixteen feet wide along the south-ern border of his proposed purchase so that he would have access to his proposed residence. Sometime after January of 1996, Goodliffe informed Anderson that the New Fence did not reflect the true boundary between the properties, and demanded that Anderson relocate the New Fence. Anderson refused.

In March of 2001, Goodliffe sought legal advice from attorney John McKinney. McKinney specifically advised Goodliffe not to pursue "self-help" remedies and wrote a letter to Anderson on March 29, 2001, demanding that the New Fence be removed and reconstructed in accordance with the Wade survey.

On April 11, 2001, Goodliffe rented a bulldozer from River City Rentals and/or Usher Construction, both businesses owned and operated by the Ushers. The Ushers knew, when they rented the bulldozer to Goodliffe, that Goodliffe intended to bulldoze a fence on a disputed property line. The Ushers neither requested any legal documentation showing Goodliffe's superior right of possession of the disputed property, nor provided any instruction as to how to handle the situation to their employee, Dan Aldous, who operated the bulldozer. At Goodliffe's instruction, Aldous used the bulldozer to remove the New Fence. He damaged several antique automobiles and other items of Andersons' personal property in the process. When Anderson heard the bulldozer, he ran out of his business and requested Aldous to cease, which Aldous refused to do. At some point, Anderson stood in front of the bulldozer. Most of the New Fence was destroyed before the police arrived to halt Aldous's action. While Anderson yelled at Aldous to stop the bulldozer, Goodliffe yelled to Aldous to run over Anderson. Goodliffe also threatened to kill Anderson if Anderson stepped upon Goodliffe's property. Aldous was not able to hear Goodliffe's threats. The Andersons paid to replace the fence and clean up the property.

On May 15, 2001, the Andersons' attorney sent a demand letter to River City Rental requesting compensation of $28,551.26 for damages as a result of the incident. On May 25, 2001, the Andersons filed a Complaint

claiming six causes of action including: to quiet title, trespass, negligence, emotional distress, attorney fees, and injunctive relief. On April 18, 2002, the Andersons filed an Amended Complaint adding a seventh cause of action for punitive damages. A bench trial took place on April 16–18, 2002. The district court quieted title of the disputed property in favor of the Andersons. The district court further determined that the Andersons could recover from Goodliffe, the Ushers, and Aldous the sum of $9,125.50 for actual damages for trespass and negligence, $1000 for emotional distress, and costs, but denied the Andersons attorney fees.

After judgment was entered at the completion of the trial, the Andersons moved the district court for reconsideration, attorney fees, and costs. The district court denied the Andersons' motions for reconsideration and attorney fees, but granted in part their motion for costs. The Andersons were allowed to recover costs as a matter of right, but were denied discretionary costs. The Andersons appealed to this Court on the issue of attorney fees.

## II.

### STANDARD OF REVIEW

■■■■ Legal questions resolved by a district court are subject to *de novo* review by this Court. *Doolittle v. Meridian Joint Sch. Dist.*, 128 Idaho 805, 811, 919 P.2d 334, 340 (1996); *see Iron Eagle Dev., L.L.C. v. Quality Design Sys., Inc.*, 138 Idaho 487, 491, 65 P.3d 509, 513 (2003). "The decision whether to award attorney fees under I.C. § 12–121 rests in the sound discretion of the district court and will only be reversed where there is an abuse of discretion." *Bingham v. Montane Res. Assoc.*, 133 Idaho 420, 427, 987 P.2d 1035, 1042 (1999).

## III.

### ANALYSIS

**A. The District Court Was Correct In Concluding The Andersons Were Not Entitled To Attorney Fees.**

1. **I.C. § 12–120(1)**

■■■■ The Andersons claim that the district court erred in determining they were not entitled to attorney fees pursuant to I.C. § 12–120(1). According to I.C. § 12–120(1):

> (1) Except as provided in subsections (3) and (4) of this section, in any action where the amount pleaded is twenty-five thousand dollars ($25,000) or less, there shall be taxed and allowed to the prevailing party, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney's fees. For the plaintiff to be awarded attorney's fees, for the prosecution of the action, written demand for the payment of such claim must have been made on the defendant not less than ten (10) days before the commencement of the action. . . .

I.C. § 12–120(1). In short, for attorney fees under this section: first, a written demand for the payment of the claim must have been made at least ten days before the commencement of the action; and second, the plaintiff must plead under $25,000. Idaho Code § 12–120(1) is narrowly construed. *L & W Supply Corp. v. Chartrand Family Trust*, 136 Idaho 738, 746, 40 P.3d 96, 104 (2002).

> The obvious purpose of I.C. § 12–120(1) is to discourage litigation, since the statute requires the defendant to be notified of the plaintiff's claim against defendant for at least ten days before a complaint can even be filed. In the event that a complaint is filed, the statute again encourages early settlement by requiring that the pleadings warn the parties that this statute will be invoked for mandatory attorney fees.

*Cox v. Mueller*, 125 Idaho 734, 737, 874 P.2d 545, 548 (1994).

The Andersons properly requested attorney fees in their complaint under I.C. § 12–120(1). Both elements of the I.C. § 12–120(1) test for attorney fees will be discussed below.

According to the statute, a demand must be made at least 10 days prior to the action. A demand was timely made by the Andersons, as evinced by sending the Respondents a demand for damages on May 15, 2001. The Andersons filed their Complaint on May 25, 2001, ten days after the demand

letter. However, the demand letter was for damages in excess of twenty-eight thousand (28,000) dollars instead of less than twenty-five thousand (25,000) dollars as required under I.C. § 12–120(1). Idaho Code § 12–120(1) requires a "written demand for the payment of such claim must have been made on the defendant not less than ten (10) days before the commencement of the action." The phrase "such claim" refers to the preceding phrase "where the amount pleaded is twenty-five thousand dollars ($25,000) or less." I.C. § 12–120(1). Therefore, we hold attorney fees are not warranted because the Andersons' written demand exceeded $25,000.

### 2. I.C. § 12–121

 The Andersons claim the district court erred by not awarding attorney fees pursuant to I.C. § 12–121. A district court has discretion whether to award attorney fees under I.C. § 12–121; as such, this Court will not disturb such a decision unless there is an abuse of discretion. *Bingham*, 133 Idaho at 427, 987 P.2d at 1042. Idaho Rules of Civil Procedure 54(e)(1) provides for an award of attorney fees under I.C. § 12–121 when the court finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation. I.R.C.P 54(e)(1).

 A trial court does not abuse its discretion if the court: perceived the issue as one of discretion; acted within the outer boundaries of this discretion and consistent with applicable legal standards; and reached the decision by an exercise of reason. *See Sun Valley Shopping Ctr., Inc. v. Idaho Power*, 119 Idaho 87, 803 P.2d 993 (1991).

First, the district court perceived the issue as discretionary by stating the proper standard for determining the award of attorney fees as discussed above. The district court also acted within the boundaries of this discretion by ruling on the Andersons' motion. By stating: "[t]his Court finds neither Goodliffe, the Ushers, nor Aldous defended this action frivolously, unreasonably, or without foundation," the district court also applied and quoted the applicable legal standards. Lastly, after applying the proper standard,

the district court reached its decision by an exercise of reason because the district court found that "Goodliffe believed he had a legal right to take the action at issue."

Based on the above discussion, the district court did not abuse its discretion by determining the Andersons were not entitled to attorney fees pursuant to I.C. § 12–121.

### B. Neither Party Is Entitled To Attorney Fees On Appeal.

 Attorney fees are permissible on appeal to the prevailing party in a civil action. I.C. § 12–121. "[A]ttorney fees under section 12–121, Idaho Code, may be awarded by the court ... [if] the case was brought, pursued or defended frivolously, unreasonably, or without foundation...." I.R.C.P. 54(e)(1). Because the district court is affirmed on all issues, the Andersons are not the prevailing party and are, therefore, not entitled to attorney fees on appeal.

 The Respondents are also not entitled to attorney fees because "[a]ttorney fees are not appropriate under I.C. § 12–121 and I.R.C.P. 54(e) unless all claims brought ... are frivolous and without foundation." *Bingham*, 133 Idaho at 427, 987 P.2d at 1042 (quoting *Mgm't Catalysts v. Turbo West Corpac, Inc.*, 119 Idaho 626, 630, 809 P.2d 487, 491 (1991)). Legitimate issues concerning the district court's interpretation of laws do not result in an award of attorney fees. *See Noble*, 135 Idaho at 504–05, 20 P.3d at 688–89.

Therefore, neither party is entitled to attorney fees on appeal under I.C. § 12–121 because the appeal was not pursued or defended frivolously, unreasonably, or without foundation.

### IV.

### CONCLUSION

We affirm the district court and hold attorney fees are not warranted because the Andersons' written demand exceeded $25,000. The district court did not abuse its discretion by determining the Andersons were not entitled to attorney fees pursuant to

I.C. § 12–121. No attorney fees are awarded on appeal. Costs to Respondents.

Chief Justice TROUT and Justices SCHROEDER, EISMANN, and BURDICK concur.